UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

Jimi Rose

Plaintiff

- against –

Norman Baehr,

Mark Atkins, Owner Operator

of Atkins Auto Sales, Inc.

Atkins Auto Sales Inc.

Colebrookdale, Township, et al:

Paul labe, Inspection Supervisor

For Colebrookdale Township

LTL Consultants et al:

Defendants

19-346

**COMPLAINT**

Jury Trial: Yes

I.      **Parties in this complaint:**

A.      List your name, address and telephone number. If you are presently in custody, include
        your identification number and the name and address of your current place of
        confinement. Do the same for any additional plaintiffs named. Attach additional sheets of
        paper as necessary.

Plaintiff      Name:                    Jimi Rose

               Street Address:          911 Barnsdale Rd

               County, City:            Lehigh County, Allentown

               State & Zip Code:        PA, 18103

               Telephone Number:        610 737 8434

| Defendant No. 1 | Name: | Norman Baehr |
|---|---|---|
| | Street Address: | 14 Dale Dr. |
| | County, City: | Berks County, Oley |
| | State & Zip Code: | PA 19547 |

| Defendant No. 2 | Name: | Colebrookdale Twp |
|---|---|---|
| | Street Address: | 765 W. Philadelphia Ave. |
| | County, City: | Berks County, Boyertown |
| | State & Zip Code: | PA 19512 |

| Defendant No. 3 | Name: | Paul Labe |
|---|---|---|
| | Street Address: | 765 W. Philadelphia Ave. |
| | County, City: | Berks County, Boyertown |
| | State & Zip Code: | PA 19512 |

| Defendant No. 4 | Name: | Mark Akins |
|---|---|---|
| | Street Address: | 835 Route 100 |
| | County, City: | Berks County Bechtelsville |
| | State & Zip Code: | PA 19505 |

| Defendant No. 5 | Name: | Barbara Akins |
|---|---|---|
| | Street Address: | 835 Route 100 |
| | County, City: | Berks County Bechtelsville |
| | State & Zip Code: | PA 19505 |

## II.   Basis for Jurisdiction:

Federal courts are courts of limited jurisdiction. Only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case involving the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another state and the amount in damages is more than $75,000 is a diversity of citizenship case.

A.    What is the basis for Federal Court Jurisdiction?
      Federal Questions

B.    If the basis for jurisdiction is Federal Question, what federal Constitutional, statutory or

      treaty right is at issue?

      Title 42 S/S 1981, Title 42 S/S 1983, Title 42 S/S 1985, Title 42 S/S 1986

      The 14th Amendment of the United States Constitution

C.    If the basis for jurisdiction is Diversity of Citizenship, what is the state of citizenship of

      each party?

## III.  Statement of Claim:

State as briefly as possible the facts of your case. Describe how each of the defendants named in
the caption of this complaint is involved in this action, along with the dates and locations of all
relevant events. You may wish to include further details such as the names of other persons
involved in the events giving rise to your claims. Do not cite any cases or statutes. If you intend
to allege a number of related claims, number and set forth each claim in a separate paragraph.
Attach additional sheets of paper as necessary.

A.    Where did the events giving rise to your claim(s) occur?
      Akins Auto Sales
      Berks County Pennsylvania
      835 Route 100
      Bechtelsville, PA 19505

B.    What date and approximate time did the events giving rise to your claim(s) occur?
      February 28th, 2017 at approximately 11:00 PM. It was pitch black, dark.

C.    Facts:
      The Plaintiff fell down the steps in the black of the night on the aforementioned property.

      Defendant No. 1, Norman Baehr, led the Plaintiff up a pitch black set of stairs which led
      into a trailer on the Akins Auto Sales lot. This is where the Plaintiff fell.
      -      Defendant Baehr did not have a sign posted "Beware of broken steps".
      -      Defendant Baehr did not have the area lit so people could see where they were
      walking. The area was pitch black; there was no lighting at all.
      -      Defendant Baehr did not have any disability ramps on his property nor did his
      business partners, Mark Akins and Barbara Akins, who all ran an automobile business

with Norman Baehr, and permitted Norman Baer to have a make-shift home and business office to sell his automobiles that were located on the property at 835 Route 100, Bechtelsville, PA 19505.

-       Norman Baehr along with his codefendants did not have any signs or entries for people who have disabilities such as the Plaintiff.

-       Paul Labe was, through his company, hired to do the inspections for Colebrookdale Township so that Colebrookdale would always be aware of illegal dwellings in the Township. In the case at bar, evidence will show that this illegal dwelling owned by Mark Akins, Barbara Akins and Norman Baer was there for 6 to 8 months. At no time did Paul Labe ever do a drive by or on spot inspection of the property, and, therefore, the Township of Colebrookdale is directly liable for allowing Mark Akins, Barbara Akins and Norman Baer to maintain and operate an illegal dwelling.

Records will show that Paul Labe never examined the property nor did his job by performing routing inspections on all business properties to make sure there were no unlawful dwellings on any property. As a result of Mr. Labe's negligence an injury occurred to the Plaintiff. The Township had a duty and responsibility to protect the public and this protection was dedicated to Paul Labe to make sure that there would be no illegal dwellings that had improper lighting and, in this case, no lighting, and that such a dwelling would be handicap accessible.

The Township of Colebrookdale, who employs Paul Labe, had a duty and responsibility to the public and, moreover, had a duty and responsibility to protect Senior Citizens from walking in to dwellings that were there illegally without any inspection or prior Township approval. the negligence on the part of Paul Labe attached itself to the Township of Colebrookdale, because, at all times relevant, the Township of Colebrookdale had a meeting of the minds with Paul Labe who they believed would enforce the laws and Township Regulations to protect the public from unlawful dwellings that did not comply with the laws of the State of Pennsylvania.

Handicap Accessible is mandatory in all buildings and dwellings. Signs must be posted that there are dangerous steps or construction on a particular property. All properties in business must have a ramp for Handicap Accessibility. All properties doing business must have proper lighting so that the Public does not hurt themselves.

The Township of Colebrookdale must make sure that such dwellings are safe for Senior Citizens who are a Protected Class under Federal and State Statutes. Where there are no provisions or notices posted informing the public that they are at risk because the building exposed and offered to the public is there unlawfully.

The Township of Colebrookdale had an absolute duty to protect the public, and they hired Paul Labe to make sure that businesses did not have an illegal vehicle or dwelling

on their property without first securing a permit. In the instant case, there was no such compliance with mandatory State Regulations or mandatory Building Regulations as set forth in the bylaws and laws maintained by Colebrookdale Township. As a result of Paul Labe and his negligence operating at the behest of Colebrookdale Township, Norman Baehr, Mark Akins and Barbara Akins were permitted to implement, construct and place on their property a dwelling that these Defendants knew that they were not given any township permit to have any such dwelling on their property and that such a dwelling would cause the public at large to be in danger.

Liability, in this case, attaches itself to the township of Colebrookdale, because if Paul Labe, their property inspector, would have done his job, the building and office of Norman Baer would have never existed, and the Plaintiff would have never received life long injuries. **None of these Defendants have a Defense.**

There are State Agents involved in the Plaintiff's injuries, and, no matter how this Court cuts the pie, the building where the Plaintiff received his injuries was placed there as the result of Colebrookdale Township and, in particular, their building inspector, Paul Labe, did willfully, knowingly and intentionally refused to protect the public and to protect Senior Citizens by allowing Norman Baer, Mark Akins and Barbara Akins to operate a Facility and Building that was not permitted to be there by law.

Records will show that the structure motor home was on this property without the proper permits and the proper license, which violated Township rules and regulations with respect to building structures on business property. No permit was ever acquired from the Township of Colebrookdale to have this trailer on the property located at 835 Route 100, Bechtelsville, PA 19505, Akins Auto Sales.

---

Defendants No. 4 and 5, Mark and Barbara Akins, under whose care the property rests, failed to meet their obligation to the public by violating statutes by allowing the trailer on the lot of their business, Akins Auto Sales. Whereby, they, at all times relevant, had placed the public in jeopardy. These two Defendants, being business owners, knew or should have known of the violation.

Also, Defendants No. 2 and 3, Colebrookdale Twp and Paul Labe, are at fault. Paul Labe, at all times relevant, worked as an inspector for Colebrookdale Twp. By not inspecting the violations on the Akins Auto Sales lot, Paul Labe failed to meet his obligations to the public, and, by extension, so did Colebrookdale Twp., the Government body which employed Mr. Labe, are equally responsible for the injuries received by the Plaintiff.

## IV.    Injuries:

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received.

The Plaintiff received injuries to his head, his right knee, his lower back, and his right shoulder as a result of the negligence of the aforementioned Defendants who had a dwelling on their property that was not there legally. The Plaintiff may not ever recover from these injuries, and the Plaintiff's medical records will show that the Plaintiff continues treatment for these injuries to this very date.

Plaintiff raised these Civil Rights Violations in the Lower Court but, as this Court knows, **Title 42 SS 1983** is all but impossible to argue in State Court because, the parties Guilty here were State actors who, at all times relevant, were acting under Color of State Law. They knew or should have known that a member of the public, a Person of Color and Senior Citizen could have fallen.

State Agents were involved in this tragedy and State Agents were just as guilty as Barbara Akins, Paul Akins and Norman Baehr for allowing these Defendants to operate from an illegal dwelling that they knew or should have known would cause great bodily injury to the public.
With no Lightings, no Warning Signs, with no Handicap Ramps and offering the Public a pitch dark place to walk is as a result of the negligence of the State Actors who, at all times relevant, knew that such an illegal dwelling would cause severe injury to the Elderly and to the public at large.

The State Court Judge may not hear the civil Rights Violations on the part of Colebrookdale Township. This is why the Plaintiff filed his Civil Rights Action against State Agents in Federal Court where the proper Jurisdiction lays.

This Court asked the Plaintiff to attach a copy of his Complaint from State Court to this Complaint, and, as this Court knows, the Plaintiff has an absolute Right to argue Federal Civil

Rights Violations in Federal Court, and that a State Court Judge can refuse to hear Federally Protected Rights Violations.

**Whereas,** proper Jurisdiction for Civil Rights Violations by State Agents is in the proper Court, this Court.

## V.    Relief:

State what you want the Court to do for you and the amount of monetary compensation, if any, you are seeking, and the basis for such compensation.

The Plaintiff seeks $300,000 from each Defendant for punitive and actual damages. A jury trial is demanded, and, because of the Plaintiff's age, the Court is asked to place this matter on a fast track.

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this $\underline{20}$ day of ___*March*___, 2019.

Signature of Plaintiff

_Jimi Rose_

Mailing Address

_911 Barnsdale Rd._
_Allentown Pa, 18103_

Telephone Number

_610 737-8434_

Fax Number *(if you have one)*

E-mail Address

_Jimi r 8 @ ya hoo. Com_

In the Court of Common Pleas
Berks County. Pennsylvania

Exibit for ch i

Jimi Rose
     Plaintiff

  Vs.

Norman Baehr ET AL:
Mark Atkins, owner
Paul Atkins, co-owner
Colebrookdale Township
Paul Labe
LTL Consultants
     Defendants

Civil Action

No. 18 – 17580

Jury Trial Demanded
Fast-Track Pleading

### Amended Complaint

BRIEF HISTORY OF CASE -FACTS

On or about October 19, 2018 the plaintiff filed his original complaint. At that time this Court decided that the plaintiff would have to pay for Sheriff Service and in effect the plaintiff was poor for one part of these proceedings and not poor for the other.

The plaintiff would like to clarify type- O- error in his original pleading in which his typist declared and stated that the plaintiff's injury happened February 28, 2016. This was a gross mistake on the part of the typist, the plaintiff's injuries occurred February 28, 2017. This date is consistent with the plaintiff's Hospital Records, Doctor's Records as well as his phone records.

Considering the inability for the plaintiff to pay for services of the sheriff that plaintiff did not have access to the Court and therefore the service was never made upon the defendants of the complaint. After the plaintiff reviewing the complaint he has decided that he would file a more comprehensive detail complaint that should satisfy the concerns of the Court. The court must understand that at the time the plaintiff wrote the complaint he was in excruciating pain and he was very upset by how he was mistreated by the defendant Norman Baehr who took delight in the plaintiff's accident.

The plaintiff was also angry because he realized that Norman Beahr lied to the plaintiff in order to get the plaintiff down to his business location. This defendant did not have a working car for the plaintiff to look at and the plaintiff did not understand why this defendant insisted that the

plaintive coming side of his office home and look at the arrangements of the office and his living quarters. Plaintiff explained to this defendant that it was cold and the plaintiff wanted to go back to Allentown. However defendant Beahr insisted that the plaintive coming to his home and office. Plaintiff explained that he can only stay for a few minutes. Plaintiff remembers that the defendant extended his arm to the plaintive to help the plaintiff into his living quarters and office.

Because there were no lights in the area was pitch black the plaintiff had no concept of his perception or depth of perception. He was completely and totally at the mercy of this defendant. Once inside this defendant's home, defendant Beahr was acting very strange trying to show the plaintiff his living quarters which was no more bigger than a tiny closet. The house is very hot and had all sorts of material building material scattered about the room. The plaintiff did not feel very well being in a closing situation and he told defendant Beahr that he would have to leave because he had to get his son ready for school.

Defendant Beahr then open the door for the plaintiff and told the plaintiff he would contact him after he talked to his business partner regarding a truck the plaintiff was looking at. The Volvo car that was, used to lure the plaintiff to this location did not start and did not work. The plaintiff was not happy with this trick or misconception and misrepresentation of the product. The plaintiff was ready to leave and exit the property when he was asked to first look inside at the defendant's home and business office.

Defendant Beahr kept telling the plaintiff that his business partner would have to approve the sale of the truck. When it came time for the plaintiff to leave the defendant opened the door and allowed the plaintiff to go down the steps unguided completely opposite of how this defendant led the plaintiff into the office and home of the defendant.

Plaintiff son was directly behind him and the area was still very dark and so much so that the plaintiff was not at all familiar with where he was going and it was as though the plaintiff was in a maze. The defendant stood at the door opening of his house office and when the plaintiff took one to the 3rd step that plaintiff went down hit his head on the metal step and his right knee went behind his back. The plaintiff's son who was behind the plaintiff was holding onto the rail and did not suffer the same fall as the plaintiff did at least I do not remember.

The plaintiff remembers that defendant BAEHR was laughing when the plaintiff fell hitting his head and chipping his knee. Medical records are going to show that the plaintiff shipped his knee on that fall and that since that time that plaintiff has received at least $12,000 in special shots to that knee.

Plaintiff will submit photographs of the trailer and which is apt accident occurred. As a court will see that the trailer was jacked up and anyone not knowing the construction of that trailer was doomed to fall and has a very serious injury. The plaintiff was very lucky that he didn't split his head wide open. Defendant never offered to take the plaintiff to a hospital and the defendant was in fact laughing at the plaintiff's fall.

The plaintiff was confused as to why the defendant was laughing and he was confused as to why the defendant would bring the plaintiff into his home and a trailer in which he knew was ring that cause injury. After several months the plaintiff realized that this defendant laid a trap for the plaintiff. Because approximately 20 years ago the plaintiff on a gentleman's club in this defendant had a girlfriend who worked there.

Defendant's girlfriend was cheating on him with the Puerto Rican and by the name of Frankie De Jesus and Frankie was supposed to be with Rochelle the defendant's girlfriend that evening. Frankie then become upset because the defendant would not leave his girlfriend Rochelle so that she could go with Frankie. Without warning nor reason Frankie began to assault defendant Baehr who was being pretty badly by Frankie. The plaintiff then asked Frankie why he beat the defendant up and Frankie replied, that the defendant was standing in the way of Rochelle Frank being together that night. Frankie went on to tell the plaintiff that he personally did not like the defendant who Frankie described as Norman. The plaintiff then explained that Frankie that he should not have done this at the plaintiff's establishment.

Frankie apologized to the plaintiff and then left with his friends and defendant Norman Baehr was pretty bloody and got into his automobile and left. Plaintiff then turned her Frankie said look he did not want Norman think that the plaintiff had anything to do with this situation. Frankie then said to the plaintiff that Norman knew what it was all about. With that in mind that plaintiff left his property to go home. The plaintiff later talked to defendant Sister Dawn Baehr who told the plaintiff that her brother believed that the plaintiff told Frankie to beat her brother up. Nothing on the planned earth could been further from the truth. Frankie de Jesus will tell this court that what happened between him and Norman was personal and was between strictly him and Norman and it was over Norman's girlfriend and the plaintiff had absolutely nothing to do with the beat down Norman received.

Plaintiff realized that perhaps he was invited down to the defendant's property to see a car that did not work. Plaintiff then started thinking that perhaps this was the reason that defendant was laughing at the plaintiff falling and causing great bodily injury to himself to the negligence of the defendant. Plaintiff cannot prove this but logically dictate that there was no reason for this defendant to ask the plaintiff to enter into his home and business office what he knew that that trailer was unsafe. Plaintiff always liked the defendant even though he had quite a reputation as being a police informant the plaintiff did not allow this information to cause him to not like the defendant.

Defendant never offered the plaintiff any help never called the plaintiff to see if the plaintiff was okay at the age of 73 and the plaintiff began to think that he was set up to fall into the world of revenge by the defendant.

The plaintiff went to the doctor immediately because he was in very bad poor condition. The Lehigh Valley Hospital wanted to do various brain scans on the plaintiff's head. However because the plaintiff is claustrophobic he could not go into the tube for an hour to and the jury

is still out on the condition of the plaintiff's head. The pictures submitted to this court clearly show that the trailer was there and was improperly assembled. Without any permits and did not have a permit to be on that particular property.

Defendant Mark Atkins, is the owner of Atkins auto-sales and he is also according to defendant Baehr is a business partner. Defendant Baehr would conduct all of the sales at auction for defendant Atkins. Once defendant Baer has his deposition taken it will come out that he told the plaintiff in front of witnesses that Mark Atkins was in fact his business partner.

Defendant Baer also told the plaintiff that mark Atkins wife cooked the books for the defendant Atkins and Baehr. This is some of the many conversations that defendant Baehr had with the plaintiff. The plaintiff only knows what he was told by defendant Baehr. The plaintiff only knows what his eyes saw when he was on the property of defendant Mark Atkins.

When the plaintiff went back to take pictures of where he fell he discovered that the trailer motor home office was on bricks and was jacked up. The plaintiff realized that the way the trailer was structured it was no more than a human death trap for anyone who did not know about the makeshift construction of defendant Baehr and his business partner.

The plaintiff then decided to go to the township of Colebrookdale to speak with the township officials about the trailer where the plaintiff received his injuries from. Upon arriving at the township office the ladies in the office told the plaintiff that he would have to talk to the building inspector Paul Labe who was in charge of inspecting properties and buildings on properties. The plaintiff was told by the ladies at the township office that he would have to wait for Mr. labe to return to the office and speak with Mr. Labe about the incident and the property as well as the building on the property belonging to defendant Baehr.

After waiting approximately 20 minutes at the township office finally Paul Labe arrived and he introduced himself to the plaintiff after the township secretary informed Mr. Labe that the plaintiff was there waiting to talk to him. Mr. labe introduced himself and the plaintiff then explained to Mr. Labe about the injury he received while visiting defendant Baehr on a property that belonged to defendant Baehr and Mark Atkins.

Soon as the plaintiff explained what happened to him at a trailer that was used as a home plus an office Mr. Labe then said to the plaintiff that the trailer was there is legally. Mr. Lave then gave the plaintiff a paper stating that the trailer that defendant Baehr was using as his home and office was illegally placed there. The plaintiff has a piece of paper and his property and will produce that piece of paper as evidence that the township was made aware of a building construction that was there illegally.

The plaintiff was then told by Mr. Labe that he would go personally and check and see if the trailer is in fact on the property. Because the trailer was there illegally and that if it was there he would issue a citation to the property owner. The plaintiff thought that defendant labe would go do as he promised and inspect the property belonging to Mark Akins and Norman

Baehr. Approximately a year went by and the plaintiff reached out to the township again and spoke this time directly to Paul labe the building inspector, the property inspector and it was at this time defendant labe told the plaintiff that he never went to inspect the property or the building/trailer. But instead he told the plaintiff that he called Akins autosales and spoke with either mark Akins are Paul Akins who assured him that they did not have a trailer on the property. With this in mind defendant Labe went no further.

Because defendant Labe did not do his job from the very beginning in his job consist of inspecting properties and buildings erected on properties illegally or that are there unfit for human habitation or are unsafe to the public at large. Defendant labe never did his job and as a result he allowed the defendants' to destroy evidence in a lawsuit that Mr. Labe knew was going to be filed against defendant Baehr as well as defendant Mark Atkins and his co-owner brother Paul Atkins. The negligence on the part of defendant Labe Hess caused plaintiff to suffer injury even greater than that which was originally imagined.

Defendants Colebrookdale have a sworn duty under the state of Pennsylvania charter laws for townships to protect the public from death or certain injuries through improper construction of buildings on properties that the public is exposed to. Defendants LTL are responsible for the actions of Paul labe and they are contracted with Colebrookdale township to make sure the public's safe from dwellings that would put the public in danger. Pursuant to the bylaws of this township, the township failed to protect the rights of the public and in this particular case a senior citizen who is a man of color. A man who received great bodily injury because defendant ColeBrookdale was negligent in retaining the services of LTL consultants who in their duty pursuant to their contract were obligated to inspect properties that had dwellings that were not fit for human habitation and did not have a permit or license to be there.

Defendant Paul labe was hired by the township to inspect buildings and properties that were not in compliance with township regulations. When defendant Labe did not inspect the properties located at Atkins auto sales he knowingly intelligently and deliberately violated the home charter rules for the township. The township is responsible for the actions of LTL consultants who were retained to protect the township and the public. However, when the township contracted these responsibilities to LTL consultants they knew or should have known the functions and responsibilities and the duties they had to protect the public.

When ColeBrookdale failed to examine, police, their obligation to make sure that there building inspector was complying not only with the laws of the State of Pennsylvania but also the township that employed LTL consultants and their employee Paul labe. As a result of this negligence the plaintiff has suffered irreparable harm and great bodily injury. If Colebrookdale would have made sure that defendant Paul Labe was doing his job the plaintiff would not have become a victim of the township's own negligence and the negligence of its inspecting company who were hired specifically to protect the public from unsafe dwellings and businesses that did not have township approval to be there. If Paul labe would have done his job and inspected this property on a daily basis he would have discovered that Norman Baehr

and Paul Atkins had maintained an illegal dwelling that was unsafe and dangerous to the public at large.

Atkins auto sales has been doing business at this location for approximately 15 or 20 years and they clearly know what the building regulations must consist of. They also knew that by allowing their silent business partner Norman Baehr to have a business and trailer and office at this location would cause the public to suffer a great injury. All these defendants are all responsible and one way or another for the injuries of the plaintiff. All the defendants have acted in concert to cover up a dwelling that was there illegally and to that extent none of these defendants have a defense.

When defendant Paul Labe refused to do his job and failed to do his job by not doing daily routine property inspections he placed the plaintiff's life in danger. When this same defendant failed to go down and personally inspect the property that he himself stated in writing was there illegally. This negligence to inspect after a complaint allowed the defendant's to destroy evidence that proves that these defendants and the township were all guilty of having a dwelling on property that was not permitted by township rules and regulations. The plaintiff has pictures he has witnesses he has phone records that prove that Atkins auto sales and its agents all have unclean hands.

Defendant Labe never did his job by that he never did property inspections at this location if he would have he would have noticed an unsafe dwelling. He would've also noticed that the lecture requires were running from a building Pacific labor belonging to mark Akins to provide electricity for his partner Norman Baehr. The photographs submitted to this court clearly show that Akins auto sales, mark Akins Barber Akins and Paul Akins- were all fully aware of the fact that they were all participants in an illegal dwelling that they knew or should have known would cause the public to suffer great bodily injury.

Defendant Norman Baehr placed his trailer there because he was in fact working for an with mark Akins silent business partner or not Norman there was a party to the auto sales carried out by the Akins family-owned business. The actions of these defendants call into question the taxes and if whether or not the federal government was also a victim in the slipshod operations. Which brings the mine a statement made by defendant Norman Baehr who insisted according to his statements that Barber Akins cooked the books.

The plaintiff was a victim of the Township of ColeBrookdale for contracting with LTL consultants who in turn retained Paul LABE to cover up the dirty illegal deeds of the defendants operating a slipshod business at Atkins auto sales business. The owner's operators at Atkins auto sales cannot declare that they were not aware of a trailer being illegally operated and parked on the property. The photographs the plaintiff has clearly would prove that Akins defendants are all guilty of trying to cover up an illegal operation.

The original complaint that the plaintiff filed it was written out of anger pain-and-suffering and was not centered on outlining the facts of this case. The original complaint filed will be used as

a exhibit rather than a complaint. There are Metairie memories that took place between the plaintiff and defendant Beahr and many of the statements made by this defendant were recorded in the original complaint. Plaintiff will get an attorney to represent him in this matter because these defendants simply have no defense not one of them. If it were not for the negligence of Colebrookdale township the plaintiff wouldn't ever suffered the horrible accident that he received at the property of Atkins auto sales

Defendant's LTL and Paul Labe are equally is guilty as the defendant Atkins auto sales. Apparently there was never any property or building inspection carried out by the township or LTL consultants. The plaintiff is injured for life the pipe to 75 years old the plaintiff did not deserve to be mistreated by these defendants because of their greed or personal vendettas. It would appear that the law would protect the plaintiff, who is a Senior citizen and a man of color. The plaintiff must not be subjected to any form of inhumane mistreatment by the Court because the plaintiff went to the property of Atkins auto sales upon invitation by defendant Norman Beahr who knew or should have known that his business office and mobile home was there illegally. Also that the building he was living in or operating out of was there without proper zoning or permit.

Mark Akins Paul Akins Barber Akins were all aware of this illegal trailer parked on their property and after they were questioned about the illegal trailer motor home office they lied to a public official and said that they did not have nor ever have such a vehicle or dwelling on their property. But the photographs taken at the location where the plaintiff received his injuries simply do not lie in fact they make full out of all the defendants were trying to cover up horrible injury to happen to elderly black man for no reason other than greed.

Plaintiff will definitely retain an attorney to defend him in this action because the plaintiff has more than documented medical evidence from the best doctors in the Lehigh Valley who will confirm the injuries of the plaintiff were due to the fall he received at these defendants property. On February 28, 2017. Plaintiff also lasted here be allowed with an attorney to file an additional amended complaint since the plaintiff is a layperson whose rights must be protected.

The plaintiff's phone records will pinpoint the time the plaintiff was at the defendant's business and home. It would be absolutely to the advantage of Colebrookdale and LTL along with Paul labe to settle this case because the trial would prove to be extremely extremely crossly to these defendants further negligence and failure to protect the public as well as the plaintiff.

According to Norman Baehr who states repeatedly that his business partner mark Akins is worth over $2 million in cash. Also that the business property's value over $2 million in assets Plaintiff has witnesses to everything that has taken place against him by defendant Norman Baehr and his codefendants Mark Atkins owner of Atkins auto sales and is brother or relative Paul Atkins co-owner of Atkins auto sales as well as Barbara Atkins another co-owner and co-conspirator to the atrocities and injuries that took place upon the plaintiff.

This case is also aivil rights case and as such the court is bound by federal law pursuant to the 14th amendment to uphold civil rights violations that occur to the willful and deliberate practice of state agents who at all times relevant were acting under color of state law. The defendants violated the plaintiff's civil rights and liberties when Dave refused to protect the plaintiff for not investigating the claims made by the plaintiff against white persons who caused the plaintiff to suffer great bodily injury.

Senior citizens are also protected under federal statutes as well as Pennsylvania's own statutes and in that these defendants acted collectively together to cause the plaintiff to suffer great bodily injury. Each defendant violated the plaintiff's civil rights and liberties and maintain a practice of policy that's indifferent to the plaintiff's civil rights and liberties. These defendants have discriminated against a senior citizen who by law has a right to travel. In that these defendants lured the plaintiff into a trap that they knew would cause the plaintiff great bodily injury because the motorhome business office trailer was there without proper approval nor any building permits. The pictures enclose speak of the words.

The picture submitted to this Court clearly show that the Township of Colebrookdale never at any time inspected the property or the business and to that extent these are civil rights violations on the part of township officials who had an absolute duty to protect the public out of their charter with the State of Pennsylvania these defendants must abide by State as well as Federal law. If these defendants would have inspected the property the contraption motorhome business office wouldn't ever been there and the plaintiff would never fell by which he suffered great bodily injury.

Norman Baehr is guilty he was the one that illegally jacked up the trailer to cause injury to the public. The Atkins defendants all knew of this illegal trailer on their property and therefore are just as guilty as their business partner Norman Baehr who was operating at all times relevant on the property of Mark Atkins auto sales also belong to his brother or other business partner Paul Atkins and his wife Barbara Atkins.

These defendants knew or should have known that they had a vehicle on the property that was never inspected and never approved by the township and therefore liability attaches itself directly to these defendants. Because they knew that allowing their business partner Norman Baehr to place such a dangerous vehicle on their property would cause these defendants to suffer liability because these defendants did nothing to protect society against an illegal structure on their property. They further supplied electric to defendant Norman Baehr and it is impossible for a trailer to be placed right next to the business office of the defendants and they not know that the trailer was there illegally. These defendants are all guilty of causing great bodily injury to the plaintiff because the law is extremely clear if they did not know they should have known that their actions would cause great bodily injury.

**Wherefore**, plaintiff demands a judgment in excess of $2 million from each defendant in punitive damages and $2 million from each defendant in this personal injury case that also violated the plaintiff's civil rights and liberties. The plaintiff is a protected class and as such must

be protected against these harsh atrocities appear to have been targeted at a elderly black man. Plaintiff reserves the right to amend this pleading with the assistance of counsel.

Respectfully submitted,

2-15-19                                                                                 Jimi Rose, Plaintiff Pro Se

**Plaintiff uses Dragon actually speaking to do his typing because he can no longer afford a typist and if there are any mistakes the plaintiff will accordingly correct them and point the same out to his attorney whoever he retains. Notice to the Court**